UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JEREMY JOHN CONNER, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No: 1:17-cv-271 |
| v. ) | |
| ) | Judge Christopher H. Steger |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OPINION

Plaintiff Jeremy Conner seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial by the Commissioner of the Social Security Administration regarding his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f [*See* Doc. 1].

The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge according to 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit [Doc. 10].

For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 19] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

**I.     Procedural History**

In April 2014, Plaintiff applied for disability insurance benefits and supplemental security income under Title II of the Act, 42 U.S.C. §§ 401-434, alleging disability as of January 3, 2014 [Tr. 27, Doc. 8]. Plaintiff's claims were denied initially as well as on reconsideration [*Id.*]. As a

1

result, Plaintiff requested a hearing before an administrative law judge [*Id.*].

In January 2016, ALJ Henry Kramzyk heard testimony from Plaintiff and a vocational expert, as well as argument from Plaintiff's attorney [*Id.* at 55-100]. The ALJ then rendered his decision, finding that Plaintiff was not under a "disability" as defined in the Act [*Id.* at 47].

Following the ALJ's decision, Plaintiff requested that the Appeals Council review his denial; however, his request for review was denied [*Id.* at 1]. Exhausting his administrative remedies, Plaintiff then filed his Complaint on September 27, 2017, seeking judicial review of the Commissioner's final decision under § 405(g) [Doc. 1]. The parties filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   Findings by the ALJ

With respect to the decision on Plaintiff's application for benefits, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018.

2. Plaintiff had not engaged in substantial gainful activity since January 3, 2014, through the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3. Plaintiff has the following severe impairments: mild degeneration to the left knee with post-operative changes of the patella, generalized convulsive epilepsy, history of atrio-ventricular nodal re-entrant tachycardia ("AVNRT"), a history of fistula from the pulmonary artery to the coronary artery and implantation of a loop recorder, degenerative disc disease ("DDD") of the lumbar spine, headaches, and depression disorder (20 C.F.R. 404.1520(c)).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. Absent certain limitations, Plaintiff retained the residual-function capacity to perform light work as defined in 20 CFR 404.1567(b).

6. Plaintiff is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. Plaintiff was born on January 5, 1972, and was 41 years old, which is defined as a younger individual (age 18-49) on the alleged disability onset date (20 C.F.R. 404.1563).

8. Plaintiff has at least a high school education and can communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a)).

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from January 3, 2014, through the date of this decision (20 C.F.R. 404.1520(g)).

[Tr. at 29-47].

### III. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the

claimant's impairment meets or equals a listed impairment he is disabled; (4) if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering her age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the Court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## IV.   Analysis

Plaintiff asserts that the ALJ committed two reversible errors when applying the five-step process. These alleged errors will be identified and discussed below.

### A.   Did the ALJ err by failing to determine that Plaintiff met Listing 4.05?

As indicated, the Court looks to a five-step sequential evaluation to determine whether the claimant is disabled. The third step in the sequential process provides, "if the claimant's impairment meets or equals a listed impairment he is disabled." Plaintiff argues that the ALJ committed a reversible error in finding that Plaintiff does not meet or equal a listed impairment— specifically, Listing Section 4.05.

Claimants bear the burden, at the third step of the sequential evaluation, to demonstrate that he meets a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d). Claimants

do not satisfy a listing unless all of the listing requirements are present. *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). *See also, Thacker v. Soc. Sec. Admin.*, 93 Fed. Appx. 725, 728 (6th Cir. 2004) ("When a claimant alleges that [they] meet[ ] or equal[ ] a listed impairment, [they] must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") If a claimant successfully carries this burden, the Commissioner must find that the claimant is disabled without considering their age, education, and work experience. 20 C.F.R. § 416.920(d).

> At the time of the ALJ's decision, Listing 4.05 provided:
>
> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 4.05.1 "The definition section of the listing includes tachycardia as an arrhythmia." *Linderman v. Comm'r of Soc. Sec.*, No. 1:16-CV-944, 2017 WL 2304281, at *9 (N.D. Ohio Apr. 6, 2017), *report and recommendation adopted*, No. 1:16-CV-944, 2017 WL 2303996 (N.D. Ohio May 25, 2017) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.00(F)(1)).

It is well-established that to be found disabled based upon a listed impairment, "the claimant must exhibit all the elements of the listing." *Robertson v. Comm'r of Soc. Sec.*, 513 Fed. App'x. 439, 440 (6th Cir. 2013) (quoting *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F. 3d 124, 125 (6th Cir. 2003)). It is not enough that a claimant comes close to meeting the requirements of a listed impairment. *Id.* As the Sixth Circuit has explained,

> [t]he requirements of section 4.05 are met where a claimant has a recurrent arrhythmia that is not fully controlled and that results in uncontrolled recurrent episodes of syncope or near syncope, and there is a documented association between the recurrent arrhythmia and the syncope or near syncope. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 4.00F(3)(a), (c), 4.05. "Syncope" is defined as "a loss of consciousness or a faint," while "near syncope" is defined as "a period of altered consciousness." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00F(3)(b).

*Id.* at 440–41. The ALJ, here, fully analyzed Listing 4.05, and substantial evidence supports his determination that Plaintiff did not meet that Listing. Section 4.05 requires evidence of syncope or near syncope "coincident with" the tachycardia. *See Linderman*, 2017 WL 2304281, at *9. It is not enough that Plaintiff merely reported episodes of syncope or near syncope. To the contrary, the Listing requires that there be a documented association between the syncope or near syncope and the recurrent arrhythmia, and Plaintiff has failed to meet this showing. At a February 2014 appointment, for instance, Plaintiff's physician informed him that his Holter monitor demonstrated no episodes of supraventricular tachycardia, and Plaintiff did not record any symptoms in his diary. Again, in September 2015, the provider stated that the device "revealed no significant abnormalities." (Tr. 31, 38, 484). While Plaintiff had subjective complaints of palpitations, syncope, and other symptoms, he was noted to be a "very poor historian, and his family [was] also to some degree." (*Id.*). Plaintiff's provider then recommended an implantable loop recorder to assess arrhythmias; however, that device also showed normal heart function. In short, the evidence does not demonstrate an association between Plaintiff's syncope or near syncope events and recurrent arrhythmia; therefore, he has failed to carry his burden to meet Listing 4.05. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (noting that plaintiffs bear the burden in demonstrating that they meet a listed impairment).

**B.  Did the ALJ err by failing to give controlling weight or to assign a weight to Plaintiff's treating provider?**

Plaintiff next argues that the ALJ committed reversible error by failing to give sufficient

weight to Plaintiff's treating medical provider's opinion. Plaintiff contends that, since his treating physician diagnosed him with disabling conditions, that opinion should have controlling weight. But, since the ALJ did not assign the provider controlling weight, Plaintiff asserts that substantial evidence does not support the ALJ's finding.

If a treating physician's opinion as to the nature and severity of impairment is: (1) well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). Yet when an opinion does not garner controlling weight, the appropriate weight will be based on the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the entire record, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating-source's opinion. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and thus "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the

treating-physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir.2004).

Here, Plaintiff points out that the ALJ erred by failing to assign a weight to Dr. Han's opinion. The ALJ's failure to assign weight to a treating physician's opinion does indeed constitute error. *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011). But such an error may be harmless if the ALJ "made sufficiently clear his reasons for discounting the opinion." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 625, 630 (6th Cir. 2016). *See Bass v. McMahon*, 499 F.3d 506, 510–11 (6th Cir.2007) (finding that the "failure to explicitly state how much weight the ALJ was providing [the treating source's] observations is harmless . . .").

In fact, the Sixth Circuit, in *Wilson v. Commissioner of Social Security*, considered three possible scenarios that could lead to a finding of harmless error for not assigning a weight to a treating provider. 378 F.3d 541, 547 (6th Cir. 2004). First, harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, harmless error could occur in the following circumstance—if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Finally, harmless error may happen in instances "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.*

While the ALJ did not give a specific weight to Dr. Han's opinion in this case, he did make clear his reasons for discounting the opinion. That is, he declined to give controlling weight to Dr. Han, stating that Dr. Han's opinion was inconsistent with both the medical record as a whole as

well as Dr. Han's own treatment records.[1] The ALJ noted that Dr. Han's opinions were "extreme" and relied "quite heavily" on Plaintiff's subjective reports, which the ALJ discounted based on his review of the record (Tr. 44). Plaintiff's treatment, for instance, was generally conservative and infrequent—with the majority of his findings being unremarkable (*Id.* at 40). The ALJ also noted that Plaintiff's complaints of pain as well as his heart condition were controlled with medication (*Id.*); *see Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (upholding a denial of benefits when the "medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling."). The ALJ further stated that Plaintiff's mental-health symptoms [depression disorder] were not substantiated by his own treatment records (*Id.*). The ALJ also noted that Plaintiff frequently cancelled or did not attend his appointments (*Id.*). Though Plaintiff may disagree with the ALJ's ultimate conclusion, his decision to reject Dr. Han's opinion was appropriate because the ALJ found that (1) his opinion was inconsistent with the other evidence in the record; and (2) his opinion was not supported by objective evidence.[2] The ALJ's explanation further provides sufficient detail to satisfy the good-reasons requirement. In other words, the ALJ adequately explained the disposition of the case to Plaintiff. *See Barncord v. Comm'r of Soc. Sec.*, No. 2:16-CV-389, 2017 WL 2821705, at *6 (S.D. Ohio June 30, 2017).

---

[1] *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (holding that "the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence") (internal quotation marks and alteration omitted); *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1370 n. 7 (6th Cir. 1991) (stating that only a treating physician's uncontradicted opinion is entitled to complete deference).

[2] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531–32 (6th Cir. 1997) (citing *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Because the ALJ provided adequate reasons for discounting Dr. Han's opinion, the Court finds that the ALJ's failure to give a specific weight to Dr. Han's opinion is harmless error. *See Friend v. Comm'r of Soc. Sec.*, 375 Fed.App'x. 543, 551 (6th Cir. 2010) (stating that the treating-provider rule is not "a procrustean bed, requiring an arbitrary conformity at all times.").

## C. Substantial evidence supports the ALJ's decision.

Because the ALJ properly explained his discounting of Dr. Han's opinion, substantial evidence supports the ALJ's determination that Plaintiff could perform a light level of work activity with certain limitations. [*See* Tr. 27-47]. Plaintiff, on the other hand, contends that the ALJ presented a skewed view of the evidence by "pick[ing] through the medical records" to support his conclusion. [Doc. 16 at 15-17]. But the ALJ is not required to summarize every factual finding, and the Court can infer that the ALJ considered the entire record in question—not just the portion discussed in the decision—where an ALJ explicitly discusses a record. *See, e.g.*, *Durio v. Comm'r of Soc. Sec.*, No. 95-1089, 1996 WL 169362, at *2 (6th Cir. Apr. 10, 1996). The ALJ did in fact consider Plaintiff's subjective complaints as evidenced by his inclusion of additional limitations in Plaintiff's residual-functional capacity. The ALJ also discussed the opinions from the state-agency physicians—all of whom opined that Plaintiff's limitations were less than those included by the ALJ in Plaintiff's residual-functional capacity. Accordingly, upon reviewing the entire record, substantial evidence supports the ALJ's decision. *See Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (noting that courts "must examine the entire records to determine if the (ALJ's) findings are supported by substantial evidence.") (citation omitted); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess.").

## V. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 19] will be **GRANTED**, and the decision of the ALJ will be **AFFIRMED**. Judgment will be entered in favor of the Defendant.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE
